UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| WHATEVER IT TAKES TRANSMISSION PARTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ALONSO CABALLERO, <br><br> Defendant. | Civil Action No. 3:21-cv-397-CHB <br><br> **MEMORANDUM OPINION AND ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Motion to Dismiss for Lack of Jurisdiction filed by Defendant Alonso Caballero, [R. 7]. Plaintiff Whatever It Takes Transmission Parts, Inc. ("WIT") responded, [R. 14], and Caballero replied, [R. 17]. Also before the Court is WIT's Motion to Amend the Complaint, [R. 16]. Caballero responded to the Motion, [R. 18], and WIT replied, [R. 19]. Thus, both Motions are ripe for review. For the reasons set forth below, the Court will deny Caballero's Motion to Dismiss for Lack of Jurisdiction and grant WIT's Motion to Amend the Complaint.

### I.   Background

WIT is a transmission–parts business headquartered in Shepherdsville, Kentucky. [R. 1, p. 2, ¶ 3]; [R. 7–1, p. 1]. Caballero, a citizen of Texas, entered negotiations with WIT in hopes of obtaining a franchise. [R. 1, pp. 1–2, ¶¶ 4, 6]. The parties executed a dealer distribution agreement ("the Agreement") on February 20, 2019, with the intention that the Agreement would renew annually. *Id.* ¶ 9, 18. On July 20, 2020, after the Agreement had renewed, Caballero informed WIT that he was closing his business and would only operate for two more weeks. *Id.* ¶

20. Caballero's termination of the Agreement resulted in monies being owed by Caballero to WIT, including payments for unaccounted inventory and account receivables. *Id.* ¶¶ 21, 23–24.

On June 16, 2021, WIT brought this diversity action against Caballero, alleging breach of contract and conversion. [R. 1, pp. 4–5, ¶¶ 26–36]. Under the diversity statute, a district court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs," and is between citizens of different states. 28 U.S.C. § 1332. The parties do not dispute citizenship but disagree as to whether the amount in controversy exceeds $75,000. WIT claims damages in excess of $75,000. [R. 1, p. 5]. Caballero moved to dismiss the action under Rule 12(b)(1) for lack of jurisdiction, arguing that the amount in controversy does not exceed the statutory threshold. [R. 7–1, p. 1]. In its Response, WIT defended its claim that its damages exceeded $75,000 and stated that it would "ask the Court for leave to amend its Complaint" so that it may request *additional* damages it is entitled to under the Agreement—specifically, a restocking fee. [R. 14, p. 7]. WIT's Motion to Amend the Complaint, [R. 16], was filed on November 23, 2021.

**II.     Motion to Dismiss for Lack of Jurisdiction**

    **a.   Rule 12(b)(1) Standard**

A motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure asserts that the court lacks subject matter jurisdiction. Motions to dismiss for lack of subject matter jurisdiction fall into two categories: facial attacks and factual attacks. *United States v. Richie*, 15 F.3d 592, 598 (6th Cir. 1994). A *facial* attack is a challenge to the sufficiency of the pleading itself. *Id.* "On such a motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235–37 (1974)). If those allegations establish federal claims, jurisdiction exists. *Gentek Bldg. v.*

*Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A *factual* attack is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction. *Richie*, 15 F.3d at 598. With a factual attack, "no presumptive truthfulness applies to the factual allegations" and "the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* In its review, the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts. *Gentek*, 491 F.3d at 330 (citations omitted). As always, the party invoking federal jurisdiction has the burden to prove that jurisdiction exists. *Glob. Tech., Inc. v. Yubei (Xinxiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015) (citation omitted).

Here, Caballero lodges a factual attack on subject matter jurisdiction, as he is attacking the amount in controversy as being allegedly insufficient to sustain federal diversity jurisdiction. *See Clair v. Zink*, No. 3:20–cv–0371, 2020 U.S. Dist. LEXIS 245009, at *3 (M.D. Tenn. Dec. 31, 2020) (construing the defendant's attack on the amount in controversy as a factual attack); *see also Kathryn Beich, Inc. v. Short*, No. 5:05–CV–2684, 2006 U.S. Dist. LEXIS 108581, at *1 (N.D. Ohio Mar. 25, 2006) (same).

### b. Analysis

"Satisfying the amount in controversy requirement is not particularly onerous." *EQT Gathering, LLC v. Webb*, No. 13-132-ART, 2014 U.S. Dist. LEXIS 53068, 2014 WL 1577055, at *3 (E.D. Ky. Apr. 17, 2014). For cases originally brought in federal court, like this one, a plaintiff's good faith assessment of his claim's value controls. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938). Because the plaintiff is "the master of the claim," he knows or should know "whether his claim is within the statutory requirements as to amount." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 157 (6th Cir. 1993) (internal citation

omitted), *abrogated on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77 (2010). Therefore, the Court may dismiss this case for failure to meet the jurisdictional threshold only if "it appears that the plaintiff's assertion of the amount in controversy was made in bad faith." *Id.* Stated differently, dismissal based on the amount in controversy is improper unless it appears "to a legal certainty" that the plaintiff's claim does not meet the jurisdictional threshold. *St. Paul*, 303 U.S. at 289.

Most courts find a legal certainty that damages could not be recovered only where the applicable state law barred the *type* of damages sought, such as a statutory prohibition against punitive damages or mental anguish. *Kovacs v. Chesley*, 406 F.3d 393, 397 (6th Cir. 2005). Moreover, "the inability of [a] plaintiff to recover an amount adequate to give the court jurisdiction does not show [a plaintiff's] bad faith or oust jurisdiction." *St. Paul*, 303 U.S. at 289. Thus, subject matter jurisdiction is proper if the law at least arguably permits the type of damages claimed, even "if it is unlikely that the plaintiff can recover [that] amount." *Kovacs*, 406 F.3d at 397.

Here, there is not a "legal certainty" that the amount in controversy is below $75,000 for several reasons. *See St. Paul*, 303 U.S. at 289. First, in its Complaint, WIT alleges a breach of contract and conversion claim, alleging damages in the amount of $78,041.03. [R. 1, p. 5]. Both breach of contract and conversion are recognized causes of action in Kentucky. *See Johnston v. Robert Bosch Tool Corp.*, No. 4:11–CV–00009–JHM, 2012 U.S. Dist. LEXIS 134668, at *8 (W.D. Ky. Sep. 20, 2012) (citing *Lenning v. Commer. Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001)) (listing the elements of a breach of contract claim under Kentucky law); *Fastenal Co. v. Crawford*, 609 F. Supp.2d 650, 673 (E.D. Ky. 2009) (citing *Ky. Ass'n of Ctys. All Lines Fund Tr. v. McClendon*, 157 S.W.3d 626, 632, n.12 (Ky. 2005)) ("A cause of action for conversion in

Kentucky requires proof of [the listed] elements[.]") Second, as noted by WIT, the Agreement between the parties contains no clear or express cap on damages. [R. 14, p. 5]; *see also* [R. 1, pp. 7–16]. Third, neither party shows the Court that the *types* of damages sought by WIT are barred by Kentucky law. *Kovacs*, 406 F.3d at 397; *see also* [R. 14, p. 5]. While Caballero tried to make such an argument by relying on two cases, one from the Western District of Kentucky and one from the Kentucky Court of Appeals, his argument fails because the cases are inapplicable to the matter at hand.

The first case cited by Caballero is *Pro–Onsite Technologies LLC v. Jefferson Cty, Ky.*, No. 3:04–CV–452–R, 2005 U.S. Dist. LEXIS 17920 (W.D. Ky. Aug. 19, 2005). [R. 7–1, pp. 5–6]. In *Pro–Onsite Technologies*, defendant filed a Rule 12(b)(6) motion to dismiss, and the court was tasked with determining whether the $75,000 threshold had been satisfied. 2005 U.S. Dist. LEXIS 17920, at *2–3. The plaintiff sought injunctive and declaratory relief, so the court measured the amount in controversy by the value of the object of the litigation (i.e., the right to perform under the contract on which the plaintiff bid). *Id.* at 5. In contrast, WIT is not seeking injunctive and declaratory relief, but monetary damages from Caballero's alleged breach of the Agreement. [R. 1, p. 5]. Thus, due to the difference in the type of relief sought, the amount in controversy in the case at bar cannot be measured according to the standards delineated in *Pro–Onsite Technologies*.

Further, in *Pro–Onsite Technologies*, the court concluded that the $75,000 threshold was not satisfied because the plaintiff claimed future profits, which are "not [] recoverable as a matter of law and must be excluded from the amount in controversy." 2005 U.S. Dist. LEXIS 17920, at *11 (citation omitted). As a result, the court determined the actual amount in controversy to be only $29,000, the value of the plaintiff's lost profits. *Id.* at 6. Here, WIT does not make a claim

for future profits, but for money lost due to Caballero's alleged failure to terminate the Agreement in accordance with its terms. *See* [R. 1]. WIT's damages are alleged to be $78,041.03, which exceeds the $75,000 threshold. [R. 1, p. 5]. Any argument by Caballero that the damages are not cognizable under the express language of the Agreement is best reserved for another day. *See Kovacs*, 406 F.3d at 396 ("The test for whether the jurisdictional amount has been met considers whether the plaintiff can succeed on the merits only in a *superficial* way.") (emphasis added).

The second case cited by Caballero is *Pharo Distrib. Co. v. Stahl*, 782 S.W.2d 635 (Ky. Ct. App. 1989). [R. 7–1, pp. 6–8]. In *Pharo*, the plaintiff filed suit against the defendants, alleging, among other things, breach of contract. 782 S.W.2d at 636. The case proceeded to trial and the plaintiff was awarded $50,000 in damages. *Id.* at 637. On appeal, the defendants attacked the judgment on the basis that the plaintiff failed to properly prove his damages. *Id.* The court agreed, reasoning that the plaintiff's damages should have been limited "to those … directly relating back to [the defendant's failure to give reasonable notice before termination] and the lost opportunity [for the plaintiff] to 'put his house in order.'" *Id.* at 639. In other words, "the amount of damages should [have] been limited to those incurred during the time span of what would have been 'reasonable notification.'" *Id.* (citation omitted). Because the jury considered a time period deemed "not relevant" by the standard above, the court reversed and remanded the issue. *Id.*

Caballero utilizes this case to argue that WIT's asserted damages do not flow from Caballero's termination, and therefore, are not allowed under Kentucky law. [R. 7–1, p. 8]. The problem with this argument, however, is that it is not appropriate at this stage of the litigation. The argument requires the Court to decide issues on the merits. For example, to determine

6

whether WIT's damages properly flow from Caballero's termination, the Court would have to decide the reasonableness of Caballero's termination and to interpret arguably ambiguous terms of the Agreement. For instance, the Agreement provides that, "[u]pon termination, all WIT inventory … will be returned to WIT within 7 days." [R. 1, p. 9]. Did this language require Caballero to return the inventory to WIT, and if he did not, does the language allow WIT to be reimbursed for such expenses as claimed in the Complaint? Maybe, maybe not. Do the reimbursement expenses objected to by Caballero qualify as "restocking fee[s]" under the Agreement? Maybe, maybe not. But nothing in the Agreement or the law demonstrates to a legal certainty that such damages are not recoverable, that they do not flow from the alleged breach, or that WIT has acted in bad faith. Consequently, Caballero's arguments are best left to the jury to decide. Further, whether Caballero may ultimately succeed on his damages argument is irrelevant to the issue of whether the amount in controversy is satisfied under 28 U.S.C. § 1332. *See Kovacs*, 406 F.3d at 397 ("In short, to deny diversity jurisdiction it is generally not enough to show that the defendant will prevail on the merits. Such arguments are more appropriately made in support of a motion for summary judgment."). *Pharo*, just like *Pro–Onsite Technologies*, fails to show the Court that the *types* of damages claimed by WIT are barred by Kentucky law. *Id.*

Finally, there are no facts that show the amount of damages claimed by WIT were pleaded in bad faith or merely to gain admission to the federal court system. *See St. Paul*, 303 U.S. at 289 ("The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction."). WIT has properly alleged damages of $78,041.03, which exceeds the $75,000 threshold. The Court has subject matter jurisdiction over the dispute.[1]

---

[1] Because the Court finds that WIT has properly pleaded damages in excess of $75,000, it will not address Caballero's argument regarding attorney's fees, which Caballero claimed was the only (inadmissible) way for WIT to "clear the jurisdictional threshold" since its other claimed damages were not allowed under Kentucky law. [R. 7–1, p. 8–10]. The Court has already explained (above) why that argument is without merit.

7

*See generally Clair*, 2020 U.S. Dist. LEXIS 245009 (where the court found the amount in controversy had been satisfied for the same reasons recognized in this opinion). Consequently, Caballero's Motion to Dismiss for Lack of Jurisdiction, [R. 7], is denied.

### III. Motion to Amend the Complaint

#### a. Standard of Review

WIT moves for leave to file an amended complaint pursuant to Fed. R. Civ. P. 15(a)(2). [R. 16, p. 1]. Rule 15(a)(2) provides that "a party may amend its pleadings only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). Caballero does not consent to WIT amending its complaint. *See* [R. 18]. Thus, WIT may only amend its complaint with the Court's permission.

"The court should freely give leave to amend when justice so requires." FED. R. CIV. P. 15(a)(2). A motion to amend should be denied, however, if there is evidence of undue delay, bad faith, undue prejudice to the non–movant, or the motion to amend would be futile. *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 519 (6th Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Dep't of Treasury, Revenue Div.*, 987 F.2d 376, 382–83 (6th Cir. 1993)). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is "plausible on its face" so long as the complaint's factual allegations "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard "is not akin to a 'probability requirement,'

but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 577). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). The process of determining if a complaint sufficiently alleges a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). Further, "[t]he complaint is viewed in the light most favorable to the [Plaintiff], the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in [Plaintiff's] favor." *Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016) (citing *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008)).

      **b. Analysis**

WIT requests leave to amend its original Complaint, [R. 1], to "assert additional damages" to "eliminate any doubt whatsoever" that the jurisdictional threshold of $75,000 has not been satisfied, as argued by Caballero. [R. 16, p. 1]. Specifically, WIT seeks to add a "restocking fee" of $26,934.19. *Id.* at 6, ¶ 39. Caballero argues that such an amendment should not be allowed since it is futile, as the parties' contract "simply does not support" a claim for the restocking fee. [R. 18, pp. 1–2]. Essentially, Caballero asserts that because WIT's additional damage claim will fail on the merits, the Court should deny WIT's request to amend its Complaint. *Id.* at 6–9. However, although Caballero argues the Agreement forecloses a restocking fee and fails to require dealers to return product to WIT upon termination, there is potentially room in the Agreement's language for a different interpretation. *See* [R. 14, p. 3].

9

In any event, at this stage of the litigation, whether WIT's claims can succeed on the merits is irrelevant. Put differently, "[t]he fact that [Caballero] may have some 'forthcoming dispositive motions,' and the possibility that [WIT] allegedly [is] 'very unlikely to prevail' is immaterial." *Alvion Props. v. Weber*, No. 3:08–0866, 2012 U.S. Dist. LEXIS 104228, at *5–6 (M.D. Tenn. July 26, 2012) (citing *St. Paul*, 303 U.S. at 289). To survive a 12(b)(6) motion to dismiss, and therefore defeat a futility argument, WIT only had to allege sufficient factual matter that established plausibility. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Upon review of its First Amended Complaint, [R. 16–1], the Court finds that WIT has satisfied this burden.

The First Amended Complaint claims damages far in excess of $75,000, and Caballero fails to present the Court with any evidence that such claims were made in bad faith. *See id.* at 7; *see also St. Paul*, 303 U.S. at 289 ("The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim."). Further, unlike the plaintiff in the case relied on by Caballero, *Carver v. Houchens Food Grp.*, No. 1:19–cv–00031–GNS–CHL, 2020 U.S. Dist. LEXIS 72594 (W.D. Ky. Apr. 24, 2020), WIT has provided factual allegations in support of its additional damage claim (i.e., the restocking fee). *See* [R. 18]. The First Amended Complaint alleges: the terms of the Agreement; that Caballero was cognizant of the restocking fee, which was both in the Agreement and attached to invoices received by Caballero; how Caballero breached the Agreement in such a manner as to justify the implication of the restocking fee; and WIT's efforts to retrieve inventory Caballero failed to return. *See* [R. 16–1, ¶¶ 27–30, 34, 39]. Such allegations are more than the "threadbare recitals" and "conclusory statements" prohibited by *Iqbal*. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *see also* [R. 19, p. 4]. The amendment can survive a Rule 12(b)(6) motion to dismiss, and

therefore, the amendment is not futile. *See Rose*, 203 F.3d at 420 (citing *Thiokol Corp.*, 987 F.2d at 382–83).

Further, the Court fails to find any evidence of undue delay or undue prejudice. *See Ziegler*, 249 F.3d at 519 (citing *Foman*, 371 U.S. at 182). "Ordinarily, delay alone, does not justify denial of leave to amend." *Mallory v. Bolton*, No. 3:19–CV–120–CRS, 2021 U.S. Dist. LEXIS 82220, at *6 (W.D. Ky. April 27, 2021) (quoting *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002)). However, at some point, "delay will become undue, placing an unwarranted burden on the court, or will become prejudicial, placing an unfair burden on the opposing party." *Morse*, 290 F.3d at 800 (citation omitted). The party opposing the amendment has the burden of demonstrating that it would be prejudicial. *Mallory*, 2021 U.S. Dist. LEXIS 82220, at *7 (citing *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986)).

> The Sixth Circuit has found undue delay in cases that are post judgment and in cases where discovery has closed, or dispositive motion deadlines have passed. *See e.g., Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (stating that allowing amendments "after discovery had passed, and a motion for summary judgment had been filed . . . would create significant prejudice to the defendants"); *Morse*, 290 F.3d at 800 ("in the post-judgment context, we must be particularly mindful of not only potential prejudice to the non-movant, but also the movant's explanation for failing to seek leave to amend prior to the entry of judgment"); *Szoke v. United Parcel Serv. of Am., Inc.*, 398 F. App'x 145, 153 (6th Cir. 2010) (citing *Corning v. Nat'l Union Fire Ins. Co.*, 257 F.3d 484, 496-97 (6th Cir. 2001)) ("a defendant suffers substantial prejudice when a plaintiff waits until after the filing of a summary judgment motion to file a motion to amend").

*Id.*

Here, WIT's proposed amendment creates neither undue delay nor prejudice. A judgment has not been reached, discovery has yet to occur, and the time for dispositive motions has not even been set, let alone passed. In addition, Caballero does not even allege undue delay or prejudice. Consequently, and in combination with the amendment's lack of futility and bad faith, the Court will grant WIT's Motion to Amend the Complaint.

## IV. Conclusion

For the reasons stated above, the Court will deny Caballero's Motion to Dismiss, [R. 7], and grant WIT's Motion to Amend the Complaint, [R. 16]. Accordingly, **IT IS HEREBY ORDERED** as follows:

1. Defendant Alonso Caballero's Motion to Dismiss for Lack of Jurisdiction, [R. 7], is **DENIED**.

2. Plaintiff Whatever It Takes Transmission Parts, Inc.'s Motion to Amend the Complaint, [R. 16], is **GRANTED**.

3. The Clerk is directed to docket the Plaintiff's tendered First Amended Complaint, [R. 16–1], as the operative Complaint in this action.

This the 20th day of January, 2022.

*Claria Horn Boom*
CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY